Street 090414 Frost Creek Farms, Inc. Appellant Robert Black v. Terrence Kendall et al. Athlete David Mueller. Good morning, Your Honors. May it please the Court, again, my name is Robert G. Black. I represent the plaintiff this morning in this matter. Your Honors, as with any case within a case involving professional negligence, there are layers to this case. We believe that when this case is stripped away, there's one thing that should be focused on, and that's the order of April 3, 2003 in the underlying matter. And it is this order, which it is alleged created duplicative enforceable judgments. It's this order that took an overlapping debt, essentially, and made it two separate non-overlapping judgments with no provision for a set-off. Just briefly, Your Honor, by way of background leading up to that order, Your Honors, my client, who is developing a residential development, sued the general on that project, McDougall Hartman. McDougall Hartman, in turn, counterclaimed against Cross Creek. Seneca, which is the subcontractor here, hired by the general, brought its own action against McDougall Hartman and Cross Creek. Seneca's action was in three counts. Count 1, foreclosure of the mechanics lien. Count 2, breach of contract versus McDougall Hartman, the general. And Count 3, a joint action under the Mechanics Lien Act against McDougall Hartman and Cross Creek, the owner. There was also a separate action, McDougall Hartman versus Seneca. All these matters were consolidated. This led to an order of July 31, 2002, where motions filed by the general and the subcontractor were granted in their favor and against Cross Creek. The next order denied requests for attorney's fees and post-judgment interest. And then we come to our order of April 3, 2003, which is the linchpin here. And this order, under subparagraph A, basically said, following summary judgment, money judgment is entered in favor of McDougall Hartman and against Cross Creek for $150,000 plus. Subparagraph B of that order then says there is a judgment in rem entered under Count 1, and it only mentions Count 1, of Seneca's own action. And that was to foreclose the mechanics lien for $54,000 and change. The order expressly stated this was not a personal judgment. It was not a personal judgment against McDougall Hartman. And at this stage, there was no provision for any set-off, anything else. This is the order that was in place on April 3 that leads us here circuitously this morning. The allegations here are that at the time this order was entered, creating on its face duplicative enforceable judgments, that this should have been recognized, it should have been dealt with, it should have been addressed, either by way of post-judgment motion or by the direct appeal. Now, what then did happen following remand is, based upon this language of the April 3 order of 2003 in the underlying matter, the court, basically, the two enforceable judgments created for the same debt, with the risk then that Cross Creek would be liable for both and not be able to obtain a set-off. Now, I think counsel and I can agree to what, in a perfect world, should have happened. What should have happened is there should not have been duplicative judgments for one debt. There should have been a mechanism in place, as it should have been under the Mechanics Lien Act or otherwise, such that Cross Creek only had to pay once $150,000 in total. That Seneca should have been paid out of the $150,000 that it owed by whatever means necessary. But that's not what happened following remand. That's not what happened based upon the language of the April 3 order without any provision for a set-off, and which creates two judgments here on its face. One, a personal judgment for money for a full $150,000. The other, the NREM judgment under the Mechanics Lien, Count 1 of Seneca's complaint, again, just involving Cross Creek, the plaintiff, and not McDougall. It's our view then that the time to address that, the time to go into that, was at the time of the entry of the judgment or thereafter and within the time for appeal. The trial court did rule that the actual damages here were not sustained until such time after the defendant's withdrawal and after the order was actually entered requiring my client to pay twice. That, we believe, Your Honors, is not susceptible to summary judgment at this stage, because what we are dealing with is the focus. The allegations went back to the April 3 order. What did the April 3 order- You haven't paid twice, have you? Pardon me? Have you paid twice? They have paid twice. My client has paid twice. They paid the $150,000 to McDougall-Hartman as ordered by the court. What the court did upon remand is there was a bond posted for $170,000, I can't remember the exact amount. The court first ordered that McDougall-Hartman be satisfied out of the bond that had been posted. So McDougall-Hartman was paid the $150,000. Following remand, basically all that was left from the appellate court opinion initially was how much, I believe it was the judgment or the interest that was due Seneca. Seneca put forth an affidavit that their lien plus judgment lien plus interest came to $80-some-thousand. Not only did the court upon remand say, okay, we're going to use the bond to pay the $150,000, I'm also ordering that Seneca, the subcontractor, be paid the $80,000. The result being my client is left to pay twice, the court at that time ruling that I can't change anything. This is what the judgment says. The judgment order says there's a money judgment here, there's a judgment in rem here, they're both going to be paid. Do you think the judge was correct? I think that, based upon the language of the order, that that was the proper ruling, yes. Doesn't your client have some other remedies? I mean, under, in the 4-3 order, paragraph B, it says that all the disputes between McDougall, Hartman, and Seneca are pending and unresolved. Correct. Under subrogation, Cross Creek has this judgment against them. With Seneca, they now can stand in Seneca's shoes and say to McDougall that, you know, you now owe us that money. We are, we paid them off, we're standing in their shoes. I mean, there are a number of remedies that your client has. There, I would say in the abstract that there are certain remedies, certainly. Well, it's not abstract, is it? It's not abstract. There are, we're not talking abstract. Well, for purposes of our summary judgment setting here, we can theorize and conjecture that there are remedies. But to answer your question more directly, the April 3 order still created the risk that they would have to pay twice. The April 3 order creating that risk made it foreseeable, reasonably foreseeable, that there would have to be a payment by duplicate judgments for what should have been one judgment. Then, when they move for a set-off that's denied, we don't know what may or may not happen with the subrogation setting. It is the risk itself that creates the actionable conduct here. Well, now, I mean, and tell you about that set-off that was denied. I mean, you know, with the Thornton case, I mean, would it still be your position that the judge is correct, even after Thornton saying that they don't have the right to set-off? As I read Thornton, Your Honor, and I know that just came out, and I know that counsel had cited the supplemental authority. As I read Thornton, and it does arise under the Contribution Mental Joint Tort Feasors Act, as opposed to a contractual setting, mechanics name setting. As I read Thornton, and I'm going to look back at my notes for a moment while we discuss this. I put the glasses back on so I can read my notes. Thornton talked about, first and foremost there, that for a set-off situation, there's a distinct cause of action where it's against the same plaintiff, and that must be raised in the pleadings, any request for a reduction of damages regarding a third party that has already been compensated may be raised at any time. Again, what we are dealing with there, I'm not sure of the relevance of Thornton here. Because it is a Contribution Mental Joint Tort Feasors setting, because it is different circumstances factually, in that, in Thornton, we had a first trial. The first trial was against the hospital, was against the hospital's nurses, and was against the doctor. And at the conclusion of the first trial, there was a jury found for all of the defendants except for one claim, and I believe that was intentional infliction of emotional distress, as to the mom, and as against the hospital for $150,000. After that point, the hospital and the nurses entered a settlement of all claims with the plaintiff. So the plaintiff had nothing left, left nothing remaining against those defendants. The plaintiff took its appeal as to the remaining defendant, the doctor. That matter was reversed, sent back for retrial as to the doctor. Pleadings were amended, so we dealt with negligent infliction of emotional distress.  What happened there was the court ultimately ruled, if I'm recalling the case correctly, that the doctor had no grounds to do anything there because he didn't do anything after the first trial, he didn't do anything within the second trial, including jury instruction conference, and the causes of action themselves were different in that, and I'm trying to remember this correctly, Your Honor, in that in the first action, the judgment and then the settlement, and expressed settlement language, dealt with the action by mom, or excuse me, by the estate, by mom for the estate. The second trial dealt with mom's action herself for negligent infliction of emotional distress where the baby essentially was left undelivered for an hour in pretty terrible circumstances. So I'm not sure that, in fact, I don't believe Thornton has any direct relevance to this case just because there are so many differences inherent in that decision. There wasn't an appeal from the denial of the set-off, was there? No, there was not, Your Honor. Is that curious? Curious is an interesting term. I think I have to go back to the fact that the risk was created by this order. It is a foreseeable risk. Whether or not someone would be successful later on based upon a motion for a set-off, direct appeal, or otherwise, are other matters that I'm not sure that we can deal with right now by way of some re-judgment. Right now, I mean, there was still pending against McDougal other claims that were unresolved, right? At what stage, Your Honor? When we came back upon remand, there were still apparently claims between McDougal and Seneca. And following remand, following the denial of the motion for a set-off, basically McDougal, Hartman, and Seneca dismissed their claims, I'd want to say voluntarily dismissed their claims, and the remainder of the case was done. We did, I mean, there were potential actions that could have been filed by your client with regard to these things. And there are a variety of legal theories. Yes, we are, again, getting into, I don't want to use the word abstract because I've already been admonished for that, but we are getting into different theories that could have been raised. But our point, again, is the risk that was created and the risk that is inherent in being subject to two duplicative judgments was created on April 3. We don't know what else could happen. Do we have a situation with superseding causation? Do we have a situation where, and this is what I would theorize, that we have to bring expert testimony in to say, okay, if there was something that should have been done on April 3, is that kind of responsibility or liability cut off because something else should have been done? That's not something that we can decide at this stage by way of summary judgment. We've cited the Lopez versus the Clifford Law Offices case that talks about the superseding causation. In that case, an injury case, plaintiff came in, consulted with the law firm. The law firm ultimately said, wrote her a letter, you know, we can't do your case. We're not interested in your case. Find an attorney. You have two years. In actuality, it was a case against the municipality, so the statute of limitations was one year. Plaintiff went and consulted with someone else. Within the one year, the person didn't want to do it, but then she believed she still had the two years, came on to somebody else after the one year had passed, but within the two years was told, nope, sorry, you've got nothing. So what I'm struggling with, it's not that complicated to see as part of the $150,000 plus is $54,000. The way you got into them, that's how you got up to $150,000. And there's traditionally for 150 years or more in debt collection, there are ways to pursue the prevention and make sure there's not double recovery and pursue remedies in a variety of ways. And again, I see there was a one motion for a set-off. The one motion for a set-off, which was denied. There was no appeal from that. No, Your Honor. And did Ms. Kendall or her office argue that motion for a set-off? No, Your Honor. Your Honor, I believe the record reflects that they had moved to withdraw before that time and that they were allowed to withdraw about concurrent with the entry of that order denying the set-off and saying you've got to pay twice. But our position again, Justice, is that all of the problems here, all of the nuances, all of the things that they had to deal with, the problems that were created, there's no guarantee that even if they sought subrogation, that they did the direct appeal, all of that was brought upon by the 3rd Order. Or the February 3rd Order by Judge Vestal. You and I can respectfully disagree. Well, I certainly understand your point, Your Honor. I know you can by your demeanor. Yes, Your Honor. Sorry, Justice.  I apologize for interrupting you. What prevents your client from pursuing any of these other avenues right now? I don't know. When you're talking about actual damages, it's like you're cut off. What's the legal cutoff here? I don't know if there is anything that prevents my client from doing so.  And doesn't that go to whether or not you've really suffered actual damages? I respectfully disagree, Your Honor. I believe that goes to the risk itself creating the foreseeable risk and the fact that the actionable, let's say, conduct occurred April of 2003. However, the accrual did not occur until they were made to pay twice. Whether or not, again, something would be successful, would not be successful, is there an obligation, then, to say, okay, we've alleged that there has been some professional negligence here. But then again, we believe that it should be cut off if we have other routes to pursue after we've been subjected to this double recovery, this double judgment. I just have a final question. Yes, Your Honor. You all will indulge me. But when we're talking about proximate cause, if there were no other remedy available, I understand your argument that this has caused this damage. But when you have five choices to make and one perhaps has been precluded to you but you still have four other remedies, I guess I have a hard time getting to proximate cause if you willfully say I'm not going to, you know, pursue the other four remedies or two or whatever that you have available because I want this party to be responsible. I want to they should have done this. I don't know how you get to proximate cause when you can get to the same result four other ways. And that's, I guess, I'd like you to address. Okay. And I'm going to go back and say that at this stage, at the summary judgment stage, in terms of causation, I don't know that causation can be determined as a legal matter. I believe that this is still something that we've got to hear something further on. This is still something that we have to hear expert testimony on. This is not something that is directly resolvable at this stage, at this point, by way of summary judgment. If there's nothing else, Your Honors, I'll come back when it's my turn. Thank you, Your Honor. Thank you, counsel. Counsel, you may proceed. Thank you, Your Honor. David Miller, and that's spelled the hard way, M-U-E-L-L-E-R, foray the defendants, Karen Kendall and Hial Royster Velker and Allen. It's spelled the hard way. H-R-V-N-A. Addressing what appears to be a significant point in that counsel is saying, this case should be reversed and remanded because a summary judgment was entered. I want to point out to the court, as we do in our brief, that the issue of whether actual damages have been sustained is a question of law. As are the underlying questions, which deal with whether there were any remedies available to the plaintiffs that would have precluded the double recovery. And I'll get into some of that in a moment. I want to point out that this is truly an extraordinary case, not one that does our proud profession well. It is extraordinary in the first instance that we have a party using the processes of the court to collect a debt that was not due. I think we all agree that there was $82,000 here that went to McDougall Hartman that McDougall Hartman was not entitled to. It is much the same, and as I was preparing to argue the case, I was sitting there pulling on my right earlobe and thought, well, this is tantamount to theft by deception. I looked at the criminal code, and sure enough, this is the same type of thing. Because if you bring a workers' compensation case when you haven't been injured, that is theft by deception. If you are coming to the court and saying my client is owed $82,000 when your client is not owed the $82,000, then that is the same type of deception. McDougall Hartman benefited to the tune of $82,000. Also, we have in the thread here the Code of Professional Responsibility 1.2F2 that says that an attorney will not seek to recover on a claim which is unwarranted at law. So at the threshold, this is an extraordinary case. It is also extraordinary in the arguments that are made by counsel for Cross Creek in his brief and before this court to say that the law under these circumstances where there is a patent inequity and injustice is powerless to act. That is much the same as saying that the law is a game with rewards to the swift and the crafty. We also want to point out that it is extraordinary to fault, as they are doing here, my clients who had nothing to do with the decision of, number one, whether to pay this off and, number two, whether to seek or to pursue any of these alternative remedies which were available to prevent this outcome. There are, I believe, and we set them forth in our employees' brief, six potential remedies, things that could and should have been done to prevent the payment of the $82,000. And these focus in in the setting of the motion for summary judgment because if any of those remedies was viable at the time that the payment was made, because that is the focal point of the legal malpractice claim, then there were no actual damages which could support a cause of action. And that's what the trial court ruled. In the first instance, the order of the trial court specifically said that the court reserves jurisdiction to apportion the proceeds of any recovery by and between McDougall Hartman and Senec. Then when the case came before this court, this court specifically found McDougall may still be found to bear some liability which will affect the amount owed by Cross Creek. Therefore, on remand, the determination of the priority and apportionment of any recovery of proceeds between McDougall Hartman and Seneca is preserved. Now, McDougall may still be found to bear some liability which will affect the amount owed by Cross Creek. Certainly, under the contract, McDougall had the responsibility to pay its subcontractors. That would be McDougall's liability which would and did affect the amount owed by Cross Creek. Then, when the case came back on remand, as we point out, section 1301 of the Code of Civil Procedure, 21301, specifically contemplates this type of situation when it says if relief is granted against a party who, upon satisfying the same, in whole or in part, will be entitled by operation of law to be reimbursed by another party to the action, the court may determine the rights of the parties as between themselves and may thereafter, upon notice and motion in the cause and upon assuring that satisfaction has been made, render a final judgment against the other party accordingly. Here, Cross Creek satisfied Seneca and thereby was entitled to be reimbursed by McDougall-Hartman. Therefore, the Code of Civil Procedure, had that section been pursued, would have resulted in the necessary adjustment of the judgment in favor of McDougall-Hartman, reducing it by the $82,000. Because what we're looking for here, in the end, is the solution to this inequity, the solution to this injustice, a balance of the scales, which is what justice is all about. Then, if we go one step further, section 14.01 of the Code of Civil Procedure provides that a judgment procured by fraud is void. That could and should have been raised, because if you focus back on the intent here, this was not an innocent proceeding whereby McDougall-Hartman's attorneys came in and sought the enforcement of the full judgment after Seneca had been paid. The setting at that time was that Cross Creek had filed its motion for set-off, and McDougall-Hartman and its attorneys resisted that motion for set-off, saying, wait a minute, we've got a judgment here that is an enforceable judgment, therefore, too bad. We're entitled to get the $82,000 plus the balance, which is exactly what they did. And that judgment was procured by fraud to the extent of the $82,000, and that is something which could and should have been raised. Then we get to the doctrine of satisfaction slash enforcement of judgments. And Starr Charters, which we cite in our brief versus Figueroa, and more recently Thornton-Meader versus Garcini, specifically hold that issues of set-off go to enforcement. They don't go to the integrity of the judgment. And why is that? Because they don't affect the integrity of the underlying judgment. They focus upon the debt, so that when the debt that is embodied in the judgment is reduced, the set-off comes automatically, and that can be raised at any time. The doctrine of set-off was not pursued in this case either. Which brings us to the final fail-safe, which is the first theory when I was reflecting on this, and said there's something badly wrong here, and when there's something wrong, the law is going to have a solution. I firmly believe that. I said, well, they're subrogated, because the primary obligor on that debt was McDougall-Hartman. That's pursuant to contract, and that's also pursuant to Section 27 of the Mechanics-Leon Act. In fact, the Mechanics-Leon Act says that an owner will never have to pay more than the contract price, provided that the owner has complied with the act and not paid the general contractor in derogation of the subcontractor's rights and remedies. So here, when Cross Creek paid Seneca, they stepped into the shoes of Seneca in Seneca's claims against McDougall-Hartman and could have assured that remedy, and if they were first obligated to pay and satisfy the full judgment in favor of McDougall-Hartman, they would have had an immediate right and remedy to go in and have McDougall-Hartman write them a check for the $82,000. And all of these things existed at the time that enforcement of the judgment was sought. And by that time, my clients had filed their motion in mid-December to withdraw, last acted in the case in mid-December with the motion to withdraw. It just so happened that it wasn't heard until the cusp of the enforcement proceedings. But it is undisputed that Karen Kendall had nothing to do with this case after the motion for leave to withdraw was filed. It is equally undisputed that she had nothing to do, as I've indicated before, with the decision not to pursue any of these remedies and instead to pay off McDougall-Hartman. Now, in reading the brief, both the appellant's brief and the reply brief of Cross Creek, one thing became apparently clear. They were not and had no intention of addressing these alternative remedies vis-a-vis the accrual of actual damages. Instead, they stand firmly on one proposition. And to paraphrase the poet and the wit of her time, Gertrude Stein, a judgment is a judgment is a judgment. In other words, they are saying if there's a judgment by gosh and by golly, there's a judgment and that judgment is enforceable and there cannot be any remedies. But we know that that's not the case. Counsel has two minutes. Well, that brings me to the perfect point for a conclusion to refer to another author and a quote that I enjoy particularly from The Mill on the Floss by George Eliot. The law is made to take care of rascals. And in this case, we have some rascality and the law takes care of that or the law should have taken care of that by disgorging the $82,000 from McDougall Hartman or by preventing it to begin with. And I will say this after I was counting it up today. This is the 93rd time I've argued before this court. I enjoy my profession. But if we ever reach the point where the law is powerless to correct inequities and injustices, then it's time for me to pack it in. Karen Kendall and Hiawoster, Velker, and Allen have nothing to do with the unfortunate result here. And I would also point out that that unfortunate result still has a tail on it, as I said at the trial court level. Go after McDougall Hartman. They've still got the $82,000. Don't come after the defendants in this case. Which prevents the other side from doing that? Nothing that I can think of. That's their right. I mean, obviously, if they were to force us to pay, we would have no recourse against McDougall Hartman. That's their remedy. Counsel, I think I noticed Mr. Black Ducky, as you were throwing the term rascal and rascality around. I'm not referring to him. I'm referring to my esteemed colleague. He was not involved in any of these acts. No, I was referring to the guy that made off with the $82,000 in his hand and said, this beats the lottery. And Mr. Black was not involved in the case at all at that point in time? No.  No. Thank you, Counsel. I think I saw you ducking. Well, I was actually writing a note to myself, but I wasn't like ducking out of anything like that. But I would concur fully that there's rascals in this case. I think it was a law firm, Attorney Sandra Bertzall was the one that stepped in after Ms. Kendall. Attorney Bertzall did step in after Ms. Kendall. She is the one who did file the motion for a set off that was unsuccessful. Attorney Bertzall has been brought in by way of a third-party action by the defendants here. But she did not have anything to do either with the representation of the party or parties who obtained this double recovery. And I note that Counsel says most eloquently that the law is supposed to correct an injustice. There is an injustice here at several levels. But the primary injustice is that my client had to pay twice based upon the order of April 3, 2003. No matter how else you cut it, that is what occurred. Counsel and I respectfully disagree on the primary focus in terms of timing of the case. Because we focus on the April 3 order and what that created, right or wrong, what that created and what that was ruled upon. Counsel does want to focus upon what happened after remand and that there are other actions and other viable alternatives. But my consideration there becomes if a party has an action that arose on April 3, do they therefore have an obligation to basically cut off that action by pursuing other remedies? And then, and even then, we don't know what would happen here. Okay, what happens if the subrogation action is brought and it's unsuccessful? Do we have to re-initiate this action here? What happens if some of these other remedies are brought and they are unsuccessful? Do we have to re-initiate some proceedings here? What happens if, for instance, I have no way of knowing one way or the other that either McDougall Hartman or Seneca in this climate are uncollectible? What does that mean? Does it mean that the action should be cut off by inaction or does that mean that the action proceeds and these other aspects are still to be resolved, decided, reviewed by way of, you know, further action, expert testimony or whatever? The action was created by this language on April 3, 2003. Using your word abstract. I really am using that word right now, Your Honor. Was there any requirement to exhaust your remedies before you could claim that someone? Your Honor, quite frankly, I'm not aware of that requirement. And I've looked at the cases in terms of the superseding causation. I've looked at, you know, whether there were talking about something in terms of mitigation of damages as opposed to having actual damages and as opposed to having the right to the action and the cause of action. Are these aspects, the failure to pursue them, are they aspects of failure to mitigate damages? I'm not sure that I have the answer to that question. I'm not sure I'm qualified to give the answer to that question this morning. But that doesn't mean that the action itself is cut off by way of summary judgment. I don't believe. Thank you, Your Honor, for your attention. Have a great day. I will take this case under advisement. We'll take a brief recess.